UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CLYDE M. SPAIN**                                                                 **CIVIL ACTION**

**VERSUS**                                                                              **NUMBER: 21-2367**

**SOCIAL SECURITY ADMINISTRATION**                               **SECTION "L" (5)**

**REPORT AND RECOMMENDATION**

Plaintiff Clyde M. Spain filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The matter has been fully briefed on cross-motions for summary judgment, and the issues are thus ripe for review. For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

**I.    BACKGROUND**

Plaintiff filed his application for DIB on July 29, 2019, alleging a disability onset date of July 22, 2019. (Adm. Rec. at 167-70). Plaintiff alleged disability due to obesity, diabetes Type 2, neuropathy, degenerative joint disease, lumbar spondylosis, right shoulder problems, sleep apnea, high blood pressure, high cholesterol, and abdominal plaque. (*Id.* at 54). Plaintiff, born on April 19, 1958, was 61 years old on the date on which he alleged onset of disability and 61 years old on the date he filed his application. (*Id.*). Plaintiff has a college education, (*id.* at 195), and he has past work experience as a customer service representative, a realtor, a paralegal/legal assistant, and an automobile rental clerk. (*Id.* at 21, 196).

Defendant initially denied Plaintiff's application on March 27, 2020. (*Id.* at 84). Plaintiff sought an administrative hearing, which took place on July 7, 2021. (*Id.* at 29-50). Plaintiff and a vocational expert ("VE"), Thomas Mungall, testified at that hearing.

On August 17, 2021, the ALJ issued a decision concluding that Plaintiff was not disabled through the date last insured. (*Id*. at 12-23). In the decision, the ALJ concluded that Plaintiff has the severe impairments of obesity, diabetes mellitus, hypertension, degenerative disc disease, and dysfunction of major joints. (*Id.* at 14). The ALJ held that, through the date last insured, Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listed impairment under the regulations. (*Id.* at 15). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work activity as defined in 20 C.F.R. § 404.1567(a). (*Id.* at 15).

The ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a receptionist. (*Id.* at 22-23). The ALJ thus concluded that Plaintiff was not disabled from July 22, 2019 through the date last insured, December 31, 2020. (*Id.* at 23).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he was not disabled. On October 19, 2021, the Appeals Council denied Plaintiff's appeal. (*Id.* at 1-6). Plaintiff then timely filed this civil action.

## II.   STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the

2

Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to

3

support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

**III. ENTITLEMENT TO BENEFITS UNDER THE ACT**

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable not only to do previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work that exists in significant volume in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical

4

> or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Id.* at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a Plaintiff is not disabled under step five of the five-part test, the Commissioner must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step five also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.

5

1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence."

*Id.*

## IV. ISSUES ON APPEAL

There are two issues on appeal as framed by Plaintiff:

(1) Whether the ALJ properly determined that Plaintiff has transferable skills such that he can perform other jobs in the national economy.

(2) Whether the ALJ and the Appeals Council judges in this case were properly appointed and whether they had legal authority to adjudicate this case.

## V. ANALYSIS OF THE ISSUES ON APPEAL

### (1) Whether the ALJ properly determined that Plaintiff has transferable skills such that he can perform other jobs in the national economy.

At the administrative hearing, the ALJ elicited testimony from the VE regarding Plaintiff's past relevant work. The VE testified that Plaintiff had past work as a customer service manager (skilled, light work), real estate sales agent (skilled, light work), paralegal (skilled, light work), and automobile rental clerk (semi-skilled, light work). (Adm. Rec. at 44-47). The VE also testified that a person who performed these jobs acquires the following skills that transfer to other semi-skilled sedentary occupations: typing, greeting the public, and taking down information. (*Id.* at 49). The VE testified that such a person could, for example, perform the job of receptionist with approximately 160,552 jobs in the national economy. (*Id.* at 49). The ALJ relied on the VE's testimony to determine that, although Plaintiff could not perform his past relevant work, he gained the ability to type, greet the public, and take down information, all skills that would transfer to the job of receptionist (semi-skilled, sedentary work) with little to no vocational adjustment. (*Id.* at 22-23). The

6

Court finds that the Commissioner's decision is supported by substantial evidence, and Plaintiff's argument to the contrary lacks merit.

Indeed, Plaintiff does not dispute that he acquired transferable skills. He suggests, however, that the ALJ did not consider whether he could perform the job of receptionist with "very little, if any, vocational adjustment." (Rec. doc. 11-2 at p. 5). Plaintiff states that "the ALJ never even acknowledged the special rules which applied due to Mr. Spain's advanced age and his restriction to sedentary work." (*Id.*). This is incorrect. Not only did the ALJ question the VE as to the transferability of skills, he also explicitly determined the transferable skills that Plaintiff had obtained through his earlier employment and noted that Plaintiff's "previous work is so similar to the job recited above that [he] would need to make very little, if any vocational adjustment in terms of tools, work processes, work settings, or the industry." (Adm. Rec. at 21-22).

Plaintiff cites to numerous Social Security Rulings ("SSRs") to support his argument that the ALJ failed to analyze the dispositive issue of transferable skills. The Court finds Plaintiff's reliance on these SSRs to be misplaced. SSR 82-62, 1982 AL 31386, applies to cases in which the ALJ determines that a claimant *can* perform past relevant work. That is not the case here as the ALJ specifically found that Plaintiff cannot perform his past relevant work. (Adm. Rec. at 21). SSR 83-14, 1983 WL 31254, applies to cases in which the ALJ applies the Medical-Vocational Guidelines to determine disability, which the ALJ did not do here. The Court finds that SSR 82-41, 1982 WL 31389, to which the ALJ explicitly adhered, applies here. Under that SSR, the ALJ concluded that Plaintiff's past relevant work was

7

substantial gainful activity, was performed long enough for Plaintiff to achieve average performance, and was performed within the relevant period of 15 years. (*Id.* at 21).

Plaintiff also misinterprets 20 C.F.R § 404.1568(d)(2). Plaintiff maintains that agency regulations provide that skill transferability is possible when the "other occupations": (1) require the same or a lesser degree of skill; (2) the same or similar tools and machines are used; and (3) the same or similar raw materials, products, processes, or services are involved. (Rec. doc. 11-2 at pp. 5-6) (citing Section 404.1568(d)(2)). While Plaintiff quotes the section of the regulation that potentially supports his argument, he ignores the next subsection, which states that "a complete similarity of all three factors is not necessary for transferability." *See* 20 C.F.R. § 404.1568(d)(3). Thus, to the extent that Plaintiff suggests the job of receptionist is not exactly like any of his past relevant work, such argument is unconvincing and does not undermine the substantial evidence, in the form of VE testimony, that supports the ALJ's decision.

Plaintiff further contends that the Work Field ("WF") code and the Materials, Productions, Subject Matter, and Services ("MPSMS") code for a receptionist differ from those of Plaintiff's past relevant work, and the ALJ thus erred when he found that Plaintiff's transferable skills could apply to employment as a receptionist. Plaintiff cites no legal authority to support this argument. To the contrary, the only cases that the Court has identified on this issue have universally rejected Plaintiff's argument. *See Russell v. Berryhill*, No. 17-cv-00065, 2017 WL 4472630, at *11 (N.D. Cal. Oct. 6, 2017); *Garcia v. Astrue*, No. 1:11-cv-00774-SKO, 2012 WL 4091847, at *7 (E.D. Cal. Sept. 17, 2012); *see also Hartley v. Colvin*, No. 2:13-cv-1863 AC, 2014 WL 6058652, *6 (E.D. Cal. Nov. 12, 2014) ("plaintiff's contention

8

that the vocational expert must rely on matching work fields and MPSMS codes when analyzing transferability is unsupported by any legal authority. In fact, the regulations specify that a complete similarity of degree of skill, tools and machinery used, and raw materials, products, processes or services involved 'is not necessary for transferability.'"); *Nunez v. Colvin*, No. EDCV 13-2131 AGR, 2014 WL 4702508, at *5, 2014 U.S. Dist. LEXIS 133183, at *12 (C.D. Cal. Sep. 22, 2014), *vacated on other grounds*, 673 F. App'x. 776 (9th Cir. 2017) (rejecting argument that VE must rely on matching work fields and MPSMS codes when analyzing transferability). Plaintiff's first argument thus fails.

> **(2) Whether the ALJ and the Appeals Council judges in this case were properly appointed and whether they had legal authority to adjudicate this case.**

Plaintiff also challenges the ALJ's and the Appeals Council judges' appointments, arguing that the ratification of their appointments by then-Acting Commissioner of the Social Security Administration ("SSA"), Nancy Berryhill, was *ultra vires*. Plaintiff contends that Berryhill's tenure under the Federal Vacancies Reform Act ("FVRA") expired before she ratified the appointments of the ALJ and the Appeals Council judges, and therefore Berryhill had no authority to appoint them.

The FVRA prescribes time limits for acting service in 5 U.S.C. § 3346. An acting official serving under the FVRA may serve "for no longer than 210 days beginning on the date the vacancy occurs; *or* . . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a)(1)-(2) (emphasis added). For vacancies existing during the first 60 days after a Presidential transition (as occurred in 2017), the 210-day period runs

9

from the later of 90 days after the inauguration or 90 days after the date of the vacancy. *Id.* § 3349a(b). If a first nomination does not result in a confirmation, an acting official may serve for another 210 days, *id.* § 3346(b)(1), and during the pendency of a second nomination. *Id.* § 3346(b)(2)(A). If the second nomination fails, then an acting official may serve for another 210 days. *Id.* § 3346(b)(2)(B).

The FVRA also provides an enforcement provision in 5 U.S.C. § 3348. "Unless" an acting official "is performing the functions and duties" of the vacant office "in accordance with sections 3345, 3346, and 3347," the "office shall remain vacant" and only the head of the agency may perform the non-delegable duties of the vacant office. 5 U.S.C. § 3348(b)(1)-(2).

Berryhill, then the Deputy Commissioner of Operations for the SSA, was designated Acting Commissioner on January 21, 2017, and served until November 16, 2017, when the initial 210-day period for acting service expired. On April 17, 2018, President Trump nominated Andrew Saul to be the Commissioner of the SSA. Upon submission of the nomination, Berryhill resumed her service as Acting Commissioner during the nomination's pendency pursuant to 5 U.S.C. § 3346(a)(2) and served until Saul was sworn in as Commissioner. On July 16, 2018, Acting Commissioner Berryhill ratified the appointments of all SSA ALJs and approved them as her own.

Plaintiff cites this Court to *Brian T.D. v. Kijakazi*, No. 19-cv-2542 (DTS), 2022 WL 179540 (D. Minn. Jan. 20, 2022), *appeal filed*, No. 22-1601 (8th Cir. Mar. 22, 2022), in which a district court concluded that because the initial 210-day acting service period lapsed before the submission of Saul's nomination in April 2018, Berryhill could not serve as Acting

10

Commissioner during the pendency of his nomination and thus could not lawfully ratify and approve the appointments of all SSA ALJs as her own. *Brian T.D.*, however, is an outlier that conflicts with the plain text of the FVRA, nearly every opinion from every other court to address the issue, as well as the views of the Executive Branch and Legislative Branch – all of which agree that Section 3346(a)(2) permits an acting official serving under the FVRA to serve during the pendency of a first or second nomination even when that nomination was submitted after the initial 210-day period for acting service has expired.

It is well-settled law that statutory interpretation "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). Here, the text of Section 3346(a)(2) is plain. Section 3346(a) provides that an acting official who is serving under the FVRA may serve "for no longer than 210 days" from the date of the vacancy, "***or***," 5 U.S.C. § 3346(a)(1) (emphasis added), "once a first or second nomination for the office is submitted to the Senate . . . for the period that the nomination is pending in the Senate." *Id.* § 3346(a)(2). By using the disjunctive "or," the FVRA provides for acting service during either or both of two periods: (1) for 210 days after the vacancy, or (2) during the pendency of a first or second nomination. It provides a single trigger for permissible service during a first or second nomination's pendency: the submission of the nomination. Thus, under Section 3346(a)(2)'s plain text, "once" Saul's "nomination for the office" of Commissioner "[wa]s submitted to the Senate," Berryhill could serve "for the period that the nomination [wa]s pending in the Senate." *Id.*

Tellingly, the actual text of the statute does not mention any requirement that a nomination be submitted within the initial 210-day period. The statute simply says that "***once*** a first or second nomination . . . is submitted," the acting official designated under the

11

FVRA may serve "for the period that the nomination is pending." 5 U.S.C. § 3346(a)(2) (emphasis added). Congress certainly could have chosen to condition such service on the submission of a nomination within 210 days, but it did not. The Court must "resist reading words . . . into a statute that do not appear on its face." *Dean v. United States*, 556 U.S. 568, 572 (2009).

The great majority of courts that have addressed this issue agree that Section 3346(a)(2) "contains a 'spring-back' provision that enabled Berryhill to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018." *Thomas S. v. Comm'r*, No. C21-05213-MAT, 2022 WL 268844, at *3 n. 2 (W.D. Wash. Jan. 28, 2022); *see also Reuter v. Saul*, No. 19-CV-2053-LRR, 2020 WL 7222109, at *15 n. 11 (N.D. Iowa May 29, 2020), *adopted by* 2020 WL 6161405, at *6 (N.D. Iowa Oct. 21, 2020); *Nw. Immigrant Rts. Proj. v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 57-58 (D.D.C. 2020) (although "far more than 210 days passed" after resignation of permanent official before submission of nomination, a "separate provision of the FVRA permits an acting official to serve 'from the date of' a first nomination for the vacant office and 'for the period that the nomination is pending in the Senate,'" such that acting official could "lawfully serv[e] as Acting Secretary" upon submission of the nomination).[1]

---

[1] *Accord Donta J. v. Saul*, No. 2:20-cv-131-RGD-DEM, 2021 WL 3705145, at *7 (E.D. Va. Apr. 2, 2021), *adopted by* 2021 WL 2711467 (E.D. Va. Jul. 1, 2021); *Austin v. Saul*, No. 19-CV-3017-CJW, 2020 WL 5229540, at *16 n. 7 (N.D. Iowa May 12, 2020), *adopted by* 2020 WL 3100838 (N.D. Iowa June 11, 2020); *Heins v. Saul*, No. 19-CV-2043-LTS, 2020 WL 6052583, at *21 n. 18 (N.D. Iowa June 11, 2020), *adopted by* 2020 WL 4369450 (N.D. Iowa July 30, 2020); *Taylor v. Saul*, No. 1:16-cv-00044, 2019 WL 3837975, at *4 (W.D. Va. Aug. 15, 2019); *Mark F. v. Berryhill*, No. 1:18-cv-02031-MJD-TWP, 2019 WL 1055098, at n. 2 (S.D. Ind. Mar. 6, 2019); *Vickie H. v. Berryhill*, No. 1:18-cv-00351-SEB-DLP, 2019 WL 1370700, at n. 2 (S.D. Ind. Mar. 1, 2019), *adopted by* 2019 WL 1367537 (S.D. Ind. Mar. 26, 2019); *Charles K. v. Berryhill*, No. 1:18-cv-02013-JPH-DML, 2019 WL 667760, at n. 2 (S.D. Ind. Feb. 15, 2019); *Lopez Davila v. Berryhill*, No. 17-cv-12212-ADB, 2018 WL 6704722, at *1 n. 1 (D. Mass. Nov. 6, 2018); *Patterson v. Berryhill*, No. 2:18-cv-00193, 2018 WL 8367459, at *1 (W.D. Pa. June 14, 2018).

Moreover, the legislative history and the views of the Executive Branch and Legislative Branch confirm that Section 3346(a)(2) serves as a spring-back provision. The Senate Report accompanying the bill that became the FVRA explained that "[u]nder new section 3346(a)(2)," an acting officer could serve for 150 days[2] and "may serve while that nomination is pending . . . *even if the nomination is submitted after the 150 days has passed*." S. Rep. No. 105-250, at 14 (1998) (emphasis added). By contrast, "between the 151st day and the day the nomination is submitted," the office must remain vacant. *Id.* at 14; *see also id.* at 18. The Executive Branch has understood Section 3346(a)(2) to operate this way since the FVRA's enactment. *See Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 68 (1999) (stating that the FVRA "permits an acting officer" to serve "again upon the submission of a nomination, even if the 210-day period expired before that nomination was submitted").

The Government Accountability Office – a non-partisan agency within the legislative Branch specifically tasked by Congress with monitoring the Executive Branch's compliance with Section 3346 – also agrees. *See, e.g., Violation of the 210-Day Limit Imposed by the Federal Vacancies Reform Act of 1998 – Department of Energy, Director of Office of Science*, B-328888 (GAO Mar. 3, 2017) (acting official whose initial 210-days had expired "could resume her service . . . when the President submitted [a] nomination to the Senate"), *https://www.gao.gov/assets/b-328888.pdf*. Thus, the Executive and Legislative Branches agree that Section 3346(a)(2) permits acting service during the pendency of a first or second

---

[2] The acting service time limit was increased from 150 days to 210 days in the FVRA's final version. *See* 5 U.S.C. § 3346(a).

13

nomination without regard to when the nomination is submitted. *Williams v. Kijakazi*, No. 1:21-CV-141-GCM, 2022 WL 2163008, at *2-4 (W.D.N.C. June 15, 2022). Based upon the foregoing statutory and case law, the Court is persuaded that Plaintiff's argument is without merit.

## VI. Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

### NOTICE OF RIGHT TO OBJECT

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).[3]

New Orleans, Louisiana, this 18th day of January, 2023.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[3] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.